UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RODNEY MULLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:13-cv-1090-JMS-MJD |
| | ) | |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Rodney Mullins protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income with the Social Security Administration ("SSA") on August 18, 2009, alleging a disability onset date of July 30, 2009. His application was initially denied on October 9, 2009, and upon reconsideration on December 14, 2009. A hearing was held on August 25, 2011, in front of Administrative Law Judge Steven E. Davis (the "ALJ"), who determined that Mr. Mullins was not entitled to receive disability insurance benefits or supplemental security income. [Filing No. 12-2 at 14.] The Appeals Council denied review, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. Mr. Mullins has filed this civil action pursuant to 42 U.S.C. § 405(g), asking the Court to review his denial of benefits. [Filing No. 1.]

## I. BACKGROUND

Mr. Mullins was forty-two years old as of his onset date. [Filing No. 11-5 at 2.] He has a high school education and previously worked as a general laborer. [Filing No. 11-2 at 15-19;

Filing No. 11-6 at 4.]  Mr. Mullins claims to have been disabled since July 30, 2009, because of a variety of physical impairments that will be discussed as necessary below.[1]  [Filing No. 11-6 at 3.]

Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520, the ALJ issued an opinion on October 21, 2011.  [Filing No. 12-2 at 5-14.]  The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Mullins had not engaged in substantial gainful activity[2] after the alleged disability onset date.  [Filing No. 12-2 at 7.]

- At Step Two, the ALJ found that Mr. Mullins suffered from the severe impairments of obesity and degenerative disk disease.  [Filing No. 12-2 at 7.]

- At Step Three, the ALJ found that Mr. Mullins did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  [Filing No. 12-2 at 8.]  The ALJ concluded that Mr. Mullins had the residual functional capacity ("RFC") to lift, carry, push, and pull ten pounds occasionally, to sit for a total of six hours in an eight-hour workday, and to stand and walk for a total of two hours in an eight-hour workday.  [Filing No. 12-2 at 9.]  He also concluded that Mr. Mullins should be able to

---

[1] Mr. Mullins detailed pertinent facts in his brief, [Filing No. 17 at 4-6], and the Commissioner did not dispute those facts, [Filing No. 22 at 2].  Because those facts implicate sensitive and otherwise confidential medical information concerning Mr. Mullins, the Court will simply incorporate those facts by reference herein.  Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a) and § 416.972(a).

perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a). [Filing No. 12-2 at 9.]

- At Step Four, the ALJ found that Mr. Mullins was unable to perform any of his past relevant work. [Filing No. 12-2 at 13.]

- At Step Five, the ALJ found that, considering Mr. Mullins' age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. [Filing No. 12-2 at 13.]

Based on these findings, the ALJ concluded that Mr. Mullins was not disabled. [Filing No. 12-2 at 14.] Mr. Mullins requested that the Appeals Council review the ALJ's decision, [Filing No. 11-2 at 10], but on May 14, 2013, the Council denied that request, [Filing No. 11-2 at 2-5]. That decision is the final decision of the Commissioner for purposes of judicial review, and Mr. Mullins subsequently sought relief from this Court. [Filing No. 1.]

## II. STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant . . . currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment . . . one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, . . . can [he] perform h[is] past relevant work, and (5) is the claimant . . . capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). "An affirmative answer leads either to the next step, or, on Steps Three and Five, to a finding that the claimant is disabled. A negative answer at any point, other than Step Three, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating all limitations that arise from medically determinable impairments, even those that are not severe. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ may not dismiss a line of evidence contrary to the ruling. *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

## III. DISCUSSION

Mr. Mullins raises five mains arguments on appeal: first, that the ALJ improperly dismissed the opinion of his nurse practitioner contrary to SSR 06-03p, [Filing No. 17 at 10-12]; second, that the denial erroneously relies on Mr. Mullins' alleged noncompliance with his treatment recommendations, [Filing No. 17 at 13-15]; third, that the ALJ failed to properly analyze his severe pain and the medication he uses to treat it, [Filing No. 17 at 16-18]; fourth, that the ALJ erroneously ignored Mr. Mullins' need for a cane for walking, [Filing No. 17 at 19]; and fifth, that the decision fails to adequately address his impairments under the Listings, [Filing No. 17 at 20-23].

### A. Nurse Practitioner's Opinion

The ALJ assigned "probative weight" to the opinion of Mr. Mullins' nurse practitioner, Ms. Stucker. [Filing No. 12-2 at 13.] Ms. Stucker concluded that Mr. Mullins' pain was a moderately severe impairment, which would seriously affect his ability to function, and that his pain medication would affect his ability to work. [Filing No. 11-8 at 40-42.] Mr. Mullins argues that the ALJ erroneously dismissed Ms. Stucker's opinion in violation of SSR 06-03p. [Filing No. 17 at 10-12.] He explains that Ms. Stucker and her supervising physician, Dr. Shreder, completed the functional assessment together and that the ALJ should have relied on this evidence as either an "acceptable medical source" or an "other source." [Filing No. 17 at 11-12.]

In response, the Commissioner explains that the ALJ did not dismiss Ms. Stucker's opinion because she is a nurse practitioner; rather, the ALJ weighed her opinion with other evidence in the record and found that it was inconsistent with that other evidence. [Filing No. 22 at 7-9.] The Commissioner argues that the ALJ properly considered Ms. Stucker's opinion as an

"other source," which is generally entitled to less weight than that of a physician.  [Filing No. 22 at 8.]

A claimant may provide evidence to establish a medically determinable impairment from "acceptable medical sources," or to show the severity and functional effects of such impairments from "other sources."  20 C.F.R. § 404.1513(a) and (d).[3]  "Acceptable medical sources" include licensed physicians, 20 C.F.R. § 404.1513(a), while "other sources" include medical sources not listed as "acceptable medical sources," such as nurse practitioners, 20 C.F.R. § 404.1513(d).  A medical opinion from an "acceptable medical source" may be given greater weight than an opinion from a medical source who is not an "acceptable medical source;" however, the weight given to "acceptable medical sources" and medical sources who are not "acceptable medical sources" often varies given the particular facts of each case.  SSR 06-03p.  When determining the weight of each opinion, the ALJ should consider several factors, including how long the source has known the individual, how frequently the source has seen the individual, and how consistent the opinion is with other evidence.  Id.  The ALJ needs to explain the weight given to opinions from "other sources" or otherwise ensure that a claimant or subsequent reviewer can follow the discussion of the opinion evidence in the ALJ's decision.  Id.; see also Zblewski v. Astrue, 302 Fed. Appx. 488, 493-94 (7th Cir. 2008) (rejecting the claimant's argument that the ALJ erroneously disregarded the opinion of a nurse practitioner and explaining that the ALJ properly

_____

[3] Social Security regulations distinguish between acceptable medical sources and other health care providers who are not acceptable medical sources for three reasons: (1) evidence from "acceptable medical sources" is needed to establish the existence of a medically determinable impairment; (2) only "acceptable medical sources" can give medical opinions; and (3) only "acceptable medical sources" can be considered treating sources whose medical opinions may be entitled to controlling weight.  SSR 06-03p (citing 20 C.F.R. §§ 404.1502, 404.1513(a), 404.1527(a)(2) and (d), 416.913(a), 416.927(a)(2) and (d)).

considered the nurse practitioner's opinion and rejected it because it was against the weight of medical evidence).

The evidence in the record, including Mr. Mullins' testimony and the medical reports, suggests that Ms. Stucker was Mr. Mullins' primary care provider, rather than Dr. Shreder. At the hearing, the ALJ asked Mr. Mullins who prescribed oxycodone to him, and Mr. Mullins replied that "Dr. Stucker" prescribed the oxycodone and that he had been seeing her since 2007. [Filing No. 11-2 at 20.] The ALJ later clarified that Ms. Stucker is a nurse practitioner and Dr. Shreder is a physician. [Filing No. 11-2 at 23.] Mr. Mullins answered affirmatively when asked whether he still sees Dr. Shreder and Ms. Stucker. [Filing No. 11-2 at 23-24.] While he did not know Dr. Shreder's specialty, he commented that Ms. Stucker is "[a] really nice lady," [Filing No. 11-2 at 23-24], which suggests that Mr. Mullins is more familiar with Ms. Stucker than Dr. Shreder. From 2008-2009, Ms. Stucker regularly treated Mr. Mullins at Wishard Hospital, [Filing No. 11-7 at 13-18; Filing No. 11-7 at 44-49], and, from 2008-2010, is routinely referred to as Mr. Mullins' primary care provider, [*see, e.g.,* Filing No. 11-7 at 45; Filing No. 11-8 at 14]. Rather than Ms. Stucker and Dr. Shreder being an interdisciplinary team or Dr. Shreder being the primary care provider, the evidence suggests that Ms. Stucker was Mr. Mullins' primary care provider. Even though the functional assessment was signed by Dr. Shreder, it was completed by Ms. Stucker, [Filing No. 11-8 at 42], and will be considered the opinion of Ms. Stucker who is an "other source."

The ALJ adequately considered Ms. Stucker's opinion in his decision. He did not dismiss her findings because she is a nurse practitioner but instead weighed her findings with the other evidence in the record. [Filing No. 12-2 at 10-11.] After a detailed analysis of Ms. Stucker's functional assessment, Dr. Ruiz's functional assessment, and other medical records,

the ALJ concluded that Ms. Stucker's opinion was inconsistent with the other evidence and did not give it controlling weight.[4]  [Filing No. 12-2 at 10-11; Filing No. 12-2 at 13.]  The ALJ is permitted to consider inconsistency as a factor when determining how much weight to accord a medical opinion.  SSR 06-03p (permissible to consider "[h]ow consistent the medical opinion is with the record as a whole"); *see also* 20 C.F.R. § 404.1527(d)(2); SSR 96-2p ("Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is 'not inconsistent' with the other substantial evidence in the case record.").

The ALJ is not bound to accept any medical opinion evidence as conclusory, as the ultimate issue of disability rests with the ALJ.  *Whitney v. Schweiker*, 695 F.2d 784, 788-89 (7th Cir. 1982); 20 C.F.R. § 404.1527(d)(2); SSR 96-2p.  The ALJ gave only "probative weight," not controlling weight, to Ms. Stucker's opinion, but he did not fully adopt the opinions of "acceptable medical sources" either.  [Filing No. 12-2 at 11.]  The ALJ explained:  "[T]he record as a whole shows that the claimant functions at a lower level than that assessed by Dr. Ruiz and he functions at a higher level than that assessed by Ms. Stucker and Dr. Shreder."  [Filing No. 12-2 at 11.]  The ALJ diligently examined and weighed all medical source opinions in Mr. Mullins' case and did not improperly dismiss Ms. Stucker's opinion.

---

[4] For example, Ms. Stucker suggested that Mr. Mullins is capable of work at a less than sedentary exertional level. [Filing No. 11-8 at 40-42.]  Contrastingly, Dr. Ruiz suggested that Mr. Mullins is capable of performing work related activities at the light exertional level subject to certain limitations, [Filing No. 11-7 at 31-38], Mr. Mullins has received only conservative treatment for his degenerative disc disease, [Filing No. 11-7 at 6-22; Filing No. 11-7 at 39-70; Filing No. 11-8 at 2-39; Filing No. 11-8 at 43-45], Dr. Alqaqaa concluded that Mr. Mullins could stand about one hour, climb two flights of stairs, and carry ten pounds with each arm, [Filing No. 11-7 at 27], and Mr. Mullins' partner stated that he can do light chores, [Filing No. 11-9 at 2].

**B. Alleged Noncompliance with Treatment Recommendations**

In assessing Mr. Mullins' credibility, the ALJ considered Mr. Mullins' failure to comply with treatment recommendations. [Filing No. 12-2 at 11-12.] Mr. Mullins acknowledges that benefits can be denied for failure to follow prescribed treatment but argues that an inability to afford the prescribed treatment is an acceptable ground for such failure. [Filing No. 17 at 13.] He claims it was error for the ALJ not to inquire why Mr. Mullins did not follow through with Ms. Stucker's recommendation for steroid injections. [Filing No. 17 at 14-15.]

The Commissioner responds that the ALJ reasonably and appropriately considered Mr. Mullins' treatment history. [Filing No. 22 at 14.] The Commissioner argues that the ALJ was not required to question Mr. Mullins about his ability to pay for the steroid injections. [Filing No. 22 at 15.] Even if the ALJ should have pursued this line of questioning, the Commissioner contends, Mr. Mullins' failure to seek the recommended treatment was only one of many factors the ALJ considered in assessing Mr. Mullins' credibility and was not reversible error. [Filing No. 22 at 15.]

The ALJ's credibility determination is given great deference and will only be overturned if it is patently wrong. *Prochaska*, 454 F.3d at 738. The ALJ here properly considered Mr. Mullins' failure to follow the recommended treatment as part of his credibility analysis. [Filing No. 12-2 at 10-12.] Specifically, Ms. Stucker recommended numerous times that Mr. Mullins receive steroid injections to help with his lower back pain. [*See, e.g.*, Filing No. 11-7 at 14; Filing No. 11-7 at 16.] The ALJ noted Mr. Mullins' failure to get the steroid injections in concluding that Mr. Mullins' statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible. Mr. Mullins never offered evidence that he could not afford the steroid injections, did not mention an inability to pay for the recommended treatment at the

hearing, [Filing No. 11-2 at 14-32], and did not allege financial hardship or lack of community resources in his brief to this Court, [Filing No. 17 at 13-15]. The ALJ is allowed to presume that a claimant, when represented by an attorney, is making his strongest case for disability. *Glenn v. Sec'y of Health and Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987); *see also* *Buchholtz v. Barnhart*, 98 Fed. Appx. 540, 546 (7th Cir. 2004) ("although [claimant] argues that the ALJ had the duty to develop the record regarding whether he sought low-cost insurance . . . the ALJ may presume that, had there been evidence that [claimant] sought low-cost options, counsel for [claimant] would have submitted it.") (citations omitted). Neither Mr. Mullins nor his counsel have argued that Mr. Mullins was unable to pay for the steroid injections.

Importantly, Mr. Mullins' noncompliance with the recommended treatment was only one of many factors the ALJ considered in his credibility determination. [Filing No. 12-2 at 10-12.] He also considered precipitating and aggravating factors, the type, dosage, effectiveness, and side effects of medications, treatment and other measures, other than medication, taken for relief of pain, Mr. Mullins' daily activities, work history, and consistencies between his allegations of pain and the objective medical evidence. [Filing No. 12-2 at 10-12.]

Because Mr. Mullins only argues that the ALJ should have inquired into Mr. Mullins' ability to pay for steroid injections, not that Mr. Mullins could not afford to pay for steroid injections, and because this consideration was one of many factors in the ALJ's credibility determination, the ALJ is not patently wrong in considering Mr. Mullins' failure to comply with the prescribed treatment.[5]

_____

[5] Mr. Mullins relies on *Brennan-Kenyon v. Barnhart*, 252 F.Supp.2d 681 (S.D. Ind. 2003), to support his claim that the ALJ committed reversible error by not investigating the reasons why Mr. Mullins did not pursue treatment, but that case is distinguishable from Mr. Mullins' case. In *Brennan-Kenyon*, the claimant testified that she had a very high health insurance deductible that may preclude her from seeking regular treatment, and the court said that the ALJ should have

### C. Pain and Medications

The ALJ found that Mr. Mullins' allegations of disabling pain, disabling functional limitations, and medicinal side effects were not entirely credible. [Filing No. 12-2 at 11-12.] Mr. Mullins argues that the ALJ failed to properly analyze his severe pain and the medication he uses to treat the pain. [Filing No. 17 at 16-18.] By only referring to the drugs prescribed to Mr. Mullins and not the actual and potential ramifications of those drugs, he claims the ALJ merely made a conclusory statement as to Mr. Mullins' credibility and did not build "'an accurate and logical bridge between the evidence and the result.'" [Filing No. 17 at 16-18.]

The Commissioner responds that the ALJ's credibility determination was sufficiently articulated and supported by substantial evidence. [Filing No. 22 at 12.] By considering numerous factors, the Commissioner claims that the ALJ reasonably articulated and considered the evidence as it applied to the factors listed in SSR 96-7p. [Filing No. 22 at 12.]

The ALJ must assess the credibility of a claimant's subjective statements based on all of the evidence in the record. *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009)*; SSR 96-7p. First, the ALJ needs to determine if there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's pain or other symptoms. SSR 96-7p. If the ALJ concludes that there is such an impairment, the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* The ALJ

---

sought additional information to develop the record on this issue. *Id.* at 697. So, unlike here, the claimant in that case specifically argued that she could not afford the recommended treatment. Additionally, the ALJ in *Brennan-Kenyon* erred in several other respects regarding his credibility determination, including that he mischaracterized the nature of the claimant's part-time work, erred in finding that the claimant's statements regarding her limitations and her responsibilities at work were inconsistent, and wrongly determined that the claimant's daily activities were inconsistent with her subjective symptoms. *Id.* at 697-99.

cannot discredit the claimant's statements concerning the nature and severity of his or her symptoms merely because the statements are not supported by objective evidence. *Simila*, 573 F.3d at 517. The ALJ will evaluate the statements unsupported by objective evidence by weighing several factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken; (5) treatment, other than medicine, for relief of pain the claimant has received; (6) any measures the claimant uses to relieve pain; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); *Villano*, 556 F.3d at 562. The ALJ's finding of credibility has to contain specific reasons that are supported by substantial evidence. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). Because the ALJ is in the best position to judge a claimant's credibility, *Id.* at 504, this finding will be overturned only if "it is so lacking in explanation or support that we find it patently wrong," *Simila*, 573 F.3d at 517 (quotations omitted).

    The ALJ's determination that Mr. Mullins' statements concerning the severity of pain and its effect on his ability to work were not credible was not patently wrong. Rather than providing conclusory statements, the ALJ systematically applied the evidence in the record to the factors in SSR 96-7p. [Filing No. 12-2 at 10-12.] He considered the nature, location, duration, frequency, and intensity of Mr. Mullins' symptoms by examining Mr. Mullins' medical records and hearing testimony. [Filing No. 12-2 at 10.] Mr. Mullins claimed to suffer from constant back pain that limits his ability to rise from a seated position, bend forward, lift heavy objects, or participate in vigorous activity. [Filing No. 11-7 at 27.] Mr. Mullins said he can only walk one mile before he must stop due to pain, stand for one hour before he must sit due to pain, climb one

to two flights of stairs, and carry up to ten pounds in his right and left arms. [Filing No. 11-7 at 27.] The ALJ compared Mr. Mullins' statements with objective medical evidence. [Filing No. 12-2 at 10.] He examined Ms. Stucker's functional assessment, [Filing No. 11-8 at 40-42], Dr. Ruiz's functional assessment, [Filing No. 11-7 at 31-38], the records from Mr. Mullins' visits to Wishard Hospital, [Filing No. 11-7 at 6-22; Filing No. 11-7 at 39-70; Filing No. 11-8 at 2-38; Filing No. 11-8 at 43-46], the reports from a magnetic resonance imaging ("MRI"), [Filing No. 11-7 at 13], Mr. Mullins' weight, [Filing No. 11-2 at 16], medicines prescribed to Mr. Mullins, [Filing No. 11-8 at 44-45], and findings from a consultative examination, [Filing No. 11-7 at 26-30]. The ALJ concluded that Mr. Mullins' statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. [Filing No. 12-2 at 10-11.]

In the absence of objective evidence to support Mr. Mullins' statements concerning the severity of pain and other symptoms, the ALJ analyzed the remaining factors in SSR 96-7p. [Filing No. 12-2 at 11-12.] Regarding any precipitating and aggravating factors, Mr. Mullins explained that exertional and postural functioning and weather changes exacerbated his symptoms. [Filing No. 11-6 at 27; Filing No. 11-2 at 21-22.] The ALJ found that these statements were inconsistent with Mr. Mullins' activities of daily living and reports to his physicians. [Filing No. 12-2 at 11.] Additionally, there was no evidence in the record suggesting that he should undergo aggressive treatments, such as prescription assistive devices and surgical interventions, that are used to address debilitating pain. The ALJ found that Mr. Mullins' inconsistent work history, prior to and after his onset date, "raises a question as to whether the claimant's continuing unemployment is actually due to his medical impairments." [Filing No. 12-2 at 12; *see also* Filing No. 11-6 at 4.] He observed that the record as a whole was quite thin and that "his treatment records for the current year are even more sparse when

compared to his allegations of debilitating back pain."  [Filing No. 12-2 at 12; *see also* Filing No. 11-8 at 29-38; Filing No. 11-8 at 44-46.]

The ALJ sufficiently considered the type, dosage, effectiveness, and side effects of medication prescribed to Mr. Mullins.  [Filing No. 12-2 at 11.]  Mr. Mullins testified at the hearing that his medications make him drowsy and non-functioning, [Filing No. 11-2 at 20] ("[I]t makes me sleep.  I mean I can't function.")], but the ALJ concluded his statements at the hearing were inconsistent with his silence to his treating sources:  "[T]here is no mention of him complaining about [the] side effects in his medical records.  As such, I see no evidence of significantly limiting side effects with regard to his medication to warrant modification of his residual functional capacity," [Filing No. 12-2 at 11]; *see* SSR 96-7p ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints…").

The ALJ's credibility finding contained specific reasons for his determination, which were supported by substantial evidence.  The ALJ recognized that Mr. Mullins' medical impairments could have reasonably caused his pain and other symptoms; however, he could not accept as credible Mr. Mullins' statements concerning the extent he is unable to perform a full range of sedentary work.  [Filing No. 12-2 at 12; Filing No. 12-2 at 14.]  His finding, which he thoroughly explained based on the evidence, was not patently wrong and will not be overturned.

### D. Cane

Mr. Mullins argues that the ALJ erred by ignoring Mr. Mullins' need for a cane for walking.  [Filing No. 17 at 19.]  If the ALJ had considered it along with his other limitations, Mr. Mullins contends, then there might not have been any jobs available to him.  [Filing No. 17 at 19.]

The Commissioner claims that Mr. Mullins has not met the regulatory threshold to show his cane was "medically required," and the ALJ reasonably considered Mr. Mullins' need for a cane for walking. [Filing No. 22 at 9-11.]

Although a hand-held device, such as a cane, does not need to be prescribed by a physician, *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), the hand-held assistive device must be medically required, SSR 96-9p. In order to prove the device is medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed…." *Id.* The claimant bears the burden of proving the device is medically required. 20 C.F.R. § 404.1512(a). Once the claimant proves the device is medically required, the ALJ must include an explanation of how the hand-held assistive device was considered in the RFC assessment. SSR 96-9p.

Mr. Mullins has not provided medical documentation to prove that his cane is medically required. Mr. Mullins' attorney told the ALJ at the hearing that Mr. Mullins' doctor recommended that he use a cane for walking. [Filing No. 11-2 at 15.] Mr. Mullins testified that he uses a cane because he feels off balance without it. [Filing No. 11-2 at 21; Filing No. 11-2 at 30-31.] But there is no recommendation for Mr. Mullins to use a cane in his medical records, [Filing No. 11-7 at 6-22; Filing No. 11-7 at 25-30; Filing No. 11-7 at 39-70; Filing No. 11-8 at 2-46], and Ms. Eldridge makes no mention of Mr. Mullins' use of a cane in her statement, either, [Filing No. 11-9 at 2].

Although the ALJ did not include a discussion of Mr. Mullins' cane in his decision, Mr. Mullins did not meet his burden to prove that his cane was medically required, and the ALJ was not specifically required to address it. He questioned Mr. Mullins about his cane at the hearing, [Filing No. 11-2 at 21], and noted in his final decision that Mr. Mullins' degenerative disc

disease was treated conservatively, without "a prescription assistive device," [Filing No. 12-2 at 10-11]. The ALJ is not required to specifically list every piece of evidence relied upon in his final decision but need only support his decision with substantial evidence. *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010). The ALJ did not commit reversible error by omitting a discussion of Mr. Mullins' use of a cane.

### E. Impairments under the Listings

The ALJ found that Mr. Mullins did not have an impairment or combination of impairments that met or equaled the severity of one of the impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1, specifically Listing 1.04. [Filing No. 12-2 at 8-9.] Mr. Mullins argues that because the determination whether an impairment equals a Listing is medical in nature, the ALJ should have consulted a medical expert rather than interpreting medical findings himself. [Filing No. 17 at 20-21.] He claims the ALJ should have summoned a medical expert to testify at the hearing after reviewing Mr. Mullins' up to date medical records. [Filing No. 17 at 21-22.] Because the ALJ was "impermissibly playing doctor," Mr. Mullins contends, the ALJ's opinion must be remanded for further consideration on this issue. [Filing No. 17 at 22.]

In response, the Commissioner claims that the ALJ did consult medical opinions and was not required to call a medical expert to testify at the hearing. [Filing No. 22 at 4-7.] The Commissioner argues that, while not required to explain why he accepted Drs. Ruiz and Whitley's opinions reflected in their Disability Determination and Transmittal Forms, the ALJ considered their expertise in his determination of medical equivalency. [Filing No. 22 at 4-6.] The Commissioner contends that the ALJ was not required to seek an additional medical opinion at the hearing from a medical expert because Mr. Mullins did not provide any evidence that he

believed would have altered the findings in the Disability Determination and Transmittal Forms.

[Filing No. 22 at 6-7.]

The ALJ concluded that Mr. Mullins has the severe impairment of degenerative disc disease. [Filing No. 12-2 at 7.] To meet or medically equal the severity of degenerative disc disease under the Listing, Mr. Mullins must provide:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 1.04.

An inability to ambulate effectively is:

> [A]n extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 1.00(B)(2)(b)(1).

In addition to having degenerative disk disease, the ALJ found that Mr. Mullins is obese.

[Filing No. 12-2 at 7.] Obesity is not an impairment under the Listings, but the musculoskeletal,

respiratory, and cardiovascular body system Listings takes into account the potential effects of obesity on these body systems. 20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 1.00(Q), 3.00(I), 4.00(I)(1); SSR No. 02-1p.

It is the ALJ's responsibility to decide the legal question of whether a claimant's impairment or combination of impairments meets or medically equals a Listing. 20 C.F.R. § 404.1526(e). The ALJ is not required to adopt state agency officials' opinions, but the ALJ cannot fully ignore those opinions. 20 C.F.R. § 404.1526(c); SSR 96-6p. State agency medical consultants are "highly qualified physicians . . . who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96-6p. The ALJ must give some degree of weight to their opinions. Id.

When a state agency official fills out a Disability Determination and Transmittal Form, it "ensures that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." Id. The ALJ may rely solely on the physicians' opinions in these forms only if there is no contradictory evidence in the record. Ribaudo v. Barnhart, 458 F.3d 580, 584 (7th Cir. 2006). If the claimant brings forth additional medical evidence that was not relied upon by the state agency officials in making their determination of disability, which the ALJ believes may alter his or her own determination of disability, the ALJ should get an updated medical opinion. SSR 96-6p.

Drs. Ruiz and Whitley submitted Disability Determination and Transmittal Forms concluding that Mr. Mullins was not disabled through October 9, 2009, and December 14, 2009, respectively. [Filing No. 11-3 at 2-5.] Although the ALJ did not specifically refer to these opinions in his Step 3 analysis, [Filing No. 12-2 at 8-9], there was no contradictory evidence in

the record, and he was not required to specifically explain why he adopted the physicians' opinions. *See Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988) ("[T]he ALJ did not reject specific evidence supporting [the claimant's] position that her impairments meet or equal a listed impairment . . . It was therefore unnecessary for the ALJ to specifically articulate his reasons for accepting the consulting physicians' opinions on the question of medical equivalency."); *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004) ("The ALJ did not reject any evidence . . . It was unnecessary for the ALJ to articulate her reasons for accepting the state agency physicians' determination of not disabled."). To the extent records from Ms. Stucker are contradictory, the ALJ adequately explained, as discussed above, why he discounted her opinion. [Filing No. 12-2 at 13.]

Mr. Mullins has presented no evidence to prove that he meets one of the Listings, and it is his burden to do so.[6] *Clifford*, 227 F.3d at 868. The Court, in its own evaluation of the rather sparse record, finds no contradictory evidence to the conclusion that Mr. Mullins does not meet Listing 1.04 or any other Listing. Subsequent to Drs. Ruiz and Whitley's submission of the Disability Determination and Transmittal Forms, Mr. Mullins visited the emergency room four times. [Filing No. 11-8 at 5-38.] On March 5, 2010, and July 2, 2010, Mr. Mullins went to the emergency room complaining of lower back pain, was given pain medication, and discharged the same day. [Filing No. 11-8 at 5-6; Filing No. 11-8 at 12-18.] On July 10, 2010, Mr. Mullins went to the emergency room complaining of dental pain, was given pain medication, and discharged the same day. [Filing No. 11-8 at 6; Filing No. 11-8 at 8-11.] On May 18, 2011, Mr. Mullins visited the emergency room for a muscle strain, was given muscle relaxers and pain medication, and discharged the same day. [Filing No. 11-8 at 29-37.] The only other evidence

---

[6] In his brief, Mr. Mullins does not make the argument that his impairments meet a Listing, but only that the ALJ should have consulted a medical expert. [Filing No. 17 at 20-23.]

in the record from December 15, 2009 through August 25, 2011 includes a list of medications prescribed to Mr. Mullins dated May 10, 2011, [Filing No. 11-8 at 44-45], a letter from State Farm Fire and Casualty Company regarding a claim dated May 20, 2011, [Filing No. 11-8 at 46], and a letter from Mr. Mullins' partner, Ms. Eldridge, dated August 8, 2011, [Filing No. 11-9 at 2]. Additionally, at the hearing, Mr. Mullins testified that he uses a cane, but can walk about one mile, can stand about an hour, and can carry a bag of groceries. [Filing No. 11-2 at 21-22.] Because there is no contradictory evidence in the record, the ALJ did not err in accepting the physicians' conclusions in the Disability Determination and Transmittal Forms. *Filus v. Astrue*, 694 F.3d 863, 867 (7th Cir. 2012).

Mr. Mullins relies on *Wadsworth v. Astrue*, 2008 WL 2857326 (S.D. Ind. 2008), to support his argument that the ALJ should have called a medical expert to testify at the hearing, [Filing No. 17 at 21-22], but *Wadsworth* is distinguishable from this case. In *Wadsworth*, there were no Disability Determination and Transmittal Forms completed by state agency officials upon which the ALJ could rely. *Id.* at *7. The physician only filled out an RFC assessment form, which does not require the physician to say whether the claimant's impairments equal a Listing. *Id.* The court held that the ALJ should have sought the opinion of a medical advisor as to this issue. *Id.*; *see also* *Barnett*, 381 F.3d at 670-71 ("[T]he ALJ did not consult an expert regarding medical equivalence . . . Nor can we locate [a Disability Determination and Transmittal Form] that would otherwise satisfy the ALJ's duty to consider an expert's opinion on medical equivalence.")

In short, because Mr. Mullins has not introduced any additional evidence that was not relied upon by Drs. Ruiz and Whitley in making their determination of disability and that contradicts their determination, the ALJ was not required to summon a medical expert to testify

at the hearing from the updated record. *See* SSR 96-6p. Without any evidence contradicting their opinions in the record, the ALJ did not err by relying on them. *Filus*, 694 F.3d at 867.

## IV. CONCLUSION

The standard for disability claims under the Social Security Act is stringent. "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. *Id.* Taken together, the Court can find no legal basis presented by Mr. Mullins to overturn the Commissioner's decision. Therefore, the decision below is **AFFIRMED**. Final judgment will enter accordingly.

**Distribution via ECF only**:

Charles D. Hankey
HANKEY LAW OFFICE
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov